UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  v.  **ISAAC PETTIFORD,**  Defendant. | 2:22-CR-20673-TGB-EAS  **ORDER GRANTING JOINT MOTION TO COMMIT DEFENDANT TO CUSTODY OF ATTORNEY GENERAL (ECF NO. 30)**  **AND DENYING AS MOOT GOVERNMENT'S MOTION FOR COMPETENCY EVALUATION (ECF NO. 26)** |

On January 8, 2025, Defendant Isaac Pettiford ("Pettiford") and the government appeared before the Court for a competency hearing. Defendant filed a competency report by Dr. Daniel Mayman dated November 12, 2024, and upon its review, both parties agreed there was an adequate basis to find Pettiford presently incompetent to stand trial. They jointly filed a motion to commit Pettiford to the custody of the Attorney General for further proceedings, including restoring his competency to stand trial. ECF No. 30, PageID.93.

Having carefully reviewed the report of Dr. Mayman, and considered the parties' arguments, the Court finds—consistent with the parties' joint motion and Dr. Mayman's report—that Pettiford is presently **INCOMPETENT**. Accordingly, pursuant to the provisions of

18 U.S.C. § 4241(d), the Court **COMMITS** Pettiford to the custody of the Attorney General for hospitalization, as directed specifically by the terms of this Order, at a suitable facility to determine whether there is a substantial probability that his competency can be restored in the foreseeable future. The Joint Motion for Restoration Proceedings (ECF No. 30) is **GRANTED** and the government's Motion for Competency Evaluation (ECF No. 26) is **DENIED** as moot.

## I. BACKGROUND

Pettiford has been charged with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with a federal officer. *See* 18 U.S.C. § 111(a)(1); ECF No. 1. The government alleges that, on November 17, 2022, Pettiford entered the Theodore Levin United States Courthouse and stated he was there to see Judge Friedman. Once he reached the top of the stairs at the Lafayette Screening Post, he lunged at a Court Security Officer, striking her abdominal region. He then fell to the ground and was immediately arrested.

Pettiford suffers from a long history of mental illness and has had competency evaluations completed locally and with the United States Bureau of Prisons ("BOP") in this case and prior cases. He was recommended to be found incompetent by Dr. Wendt in 2018, Dr. Abramsky in 2021, and Dr. Nybo in July 2023. But Dr. Voehringer recommended in February 2024 that Pettiford's "competency-related abilities ha[d] notably improved in the context of adherence to

2

psychotropic medication" and that he had regained competency for the current charge.

But following an unforeseen decline in his status, the parties and the Court revisited the competency issue again. On September 4, 2024, the government filed a motion for competency evaluation designation to the BOP. ECF No. 26. However, the parties worked together to explore feasible local options for Pettiford to be evaluated for competency. Accordingly, Pettiford was locally evaluated by a private forensic evaluator, Dr. Daniel M. Mayman. The parties stipulated to the admissibility of the forensic evaluation completed by Dr. Mayman on November 12, 2024, which concludes that Pettiford is incompetent to stand trial.

The Court held a hearing on January 8, 2025 during which Defendant Pettiford and the Government both agreed there was an adequate basis to find Pettiford presently incompetent to stand trial.

**II. LEGAL STANDARD**

The conviction of a defendant while he is mentally incompetent violates due process. *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

The test for incompetency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*,

3

362 U.S. 402, 402 (1960). This is a high bar, and the ultimate determination of competency is a question left to the Court's sound discretion. *See United States v. Emery*, No. 18-20240, 2019 WL 6873654, at *2 (E.D. Mich. Dec. 17, 2019); *see also* Fed. Proc. § 22:575, *Hearing and Determination as to Competency*. Medical opinions, and the opinions of counsel, must be considered but are not binding on the Court; the Court may also rely on its own observations of a defendant's behavior. *See United States v. Walker*, 301 F.2d 211, 213–15 (6th Cir. 1982); *see also United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000) ("When assessing a defendant's competence, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." (internal quotations omitted)).

If the Court finds by a preponderance of the evidence that a defendant is incompetent, the Court must commit the defendant to the custody of the Attorney General for hospitalization at a suitable facility for a reasonable period, not to exceed four months, to determine whether there is a substantial probability that the defendant's competency can be restored. 18 U.S.C. § 4241(d); *see also United States v. Shawar*, 865 F.2d 856, 860–62 (7th Cir. 1989) (holding that commitment is required without regard to whether the defendant is considered dangerous). If and when the director of that facility determines that the defendant has sufficiently been restored to competency, he or she must promptly file a certificate to that effect with the Court, and the Court must conduct

4

another hearing to satisfy itself that proceedings may continue. 18 U.S.C. § 4241(e).

## III. DISCUSSION

The parties stipulated to the admissibility of Dr. Mayman's report and do not contest its findings nor offer any contrary evidence. ECF No. 30, PageID.95–96. In the Court's estimation, the twelve-page report is thorough and well-documented: it details Dr. Mayman's methodology and summarizes his observations of Pettiford's mental status and behavior over the course of the 1.5 hour-long clinical interview. *See* Dr. Mayman's November 12, 2024, Competency Evaluation.

Dr. Mayman explained that Pettiford's condition "made it impossible to collect typical background information," and a result relied on relevant recent records. *Id*. at p. 4. The records indicate numerous involuntary psychiatric hospitalizations and a history of symptoms similar to those Pettiford presented with at the time of Dr. Mayman's evaluation, going back more than a decade, even while receiving antipsychotic medication, including grandiose, persecutory, referential, and bizarre delusions. He also experiences command auditory hallucinations and delusions of reference that the television or radio can communicate with him.

Dr. Mayman opined that Pettiford's symptoms were "so severe that they limited his ability to fully assess all capacities relevant to competency." *Id*. at p. 10. Dr. Mayman stated Pettiford appeared

5

"surprisingly knowledgeable" about his charges, the workings of the legal system, and his rights. *Id.* However, Dr. Mayman opined that,

> [H]is psychotic symptoms and markedly disorganized thought process significantly impair his ability to the understand the nature and consequences of the proceedings against him or to assist properly in his defense. They also impair his ability to present a defense at trial as he would struggle to follow the proceedings and would be prone to unusual statements or behaviors that could be misinterpreted by a jury, such as laughing inappropriately.
>
> Regarding his ability to understand the nature and consequences of the proceedings against him, he has a delusion that he is currently a law enforcement officer on a secret mission to save the world and these charges, being incarcerated, and the underlying alleged conduct are all part of his mission. He does not have a rational understanding of his situation and therefore has no basis from which to make rational legal decisions. His legal situation is relatively unimportant to him given his delusional "secret mission."
>
> Even more impaired is his ability to rationally assist in his defense. Due to his illness, he cannot remain on topic and it is understandable that his defense team has struggled to make any headway. A clear example of this impairment from my evaluation was when I asked him if he understood the advisements I gave him regarding privacy and other issues related to the evaluation and he said "I'm wearing a wire for the DEA" and rambled for a while and concluded that he may "wake up and be a girl in somebody's basement."

*Id.* at pp. 10–11. Other examples include, when Dr. Mayman asked Pettiford why he was in jail, he responded, "I'm an area manager. Somebody else will be me—in the future. I work for five different police

6

departments." *Id.* at p. 7. When Dr. Mayman asked him how he hopes the case against him will be resolved, he said that he had a business in which he "owns the name" of "seven, eight, nine 10, six, three, five—[but] they withholding six, eight, and then—the other ones I still got." *Id.* at p. 8. Dr. Mayman redirected him to the topic of resolving his charges, but he again responded incoherently: "I want to go on that plane and finish it off. It won't be a delusion to you all no more. Once I get on that plane and I sit to the right, I'm going to fry my nuts." *Id.*

Similarly concerning is Dr. Mayman's report that Pettiford has been refusing to take antiretroviral medications lately "due to psychotic symptoms" in jail, specifically he cannot sign documents (such as the consent form for the HIV medication) or he will "be a girl" or somebody will "take [his] legs." *Id.* at p. 11. Dr. Mayman opines that Pettiford does not have the capacity to rationally make this decision. *Id.*

Dr. Mayman concludes that Pettiford was "incompetent to stand trial" at the time of the evaluation, and that his prognosis was "poor given the fixed nature of his delusions and how long they have persisted even while taking antipsychotic medications." *Id.* at pp. 2, 11. The Court thus finds, based on a preponderance of the evidence, that Pettiford does not have the present ability to consult with his counsel with a reasonable degree of rational understanding and presently lacks a rational as well as factual understanding of the proceedings.

**IV. CONCLUSION**

For the reasons above, the Court **FINDS** by a preponderance of the evidence that Pettiford is presently **INCOMPETENT** to stand trial. The Joint Motion for Restoration Proceedings (ECF No. 30) is **GRANTED** and the government's Motion for Competency Evaluation (ECF No. 26) is **DENIED** as moot.

Accordingly, **IT IS ORDERED**, that pursuant to 18 U.S.C. § 4241(d), Pettiford is **COMMITTED** to the custody of the Attorney General for hospitalization at a suitable facility for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that Pettiford can be restored to competency in the foreseeable future.

**IT IS FURTHER ORDERED**,

- that the Attorney General shall designate, as soon as its practicable, but within thirty (30) days of the entry of the order to the United States Marshals a suitable facility for Pettiford's hospitalization and communicate the name of that facility to all parties, including the Court;

- that, upon Pettiford's hospitalization, the Government shall submit regular reports to the Court regarding the status of Pettiford's restoration at thirty-day intervals, *see United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000);

- that nothing in this order shall be construed as authorization to involuntarily administer antipsychotic medication to Pettiford, *see Sell v. United States*, 539 U.S. 166, 179 (2003); *United States v. Berry*, 911 F.3d 354, 360 (6th Cir. 2018), and that, if mental-health professionals at Pettiford's facility

8

should recommend involuntary administration of antipsychotic medication, the director of Pettiford's facility shall promptly file a report to that effect with the Court and provide copies of the report to government and defense counsel;

- that upon the receipt of such certificate, each party shall file a response to such certification within SEVEN (7) DAYS, so that the Court may direct further proceedings and make further findings as necessary;

- that, pursuant to 18 U.S.C. § 4241(e), if the director at Pettiford's facility determines that Pettiford has been restored to competency, the director shall promptly file a certificate to that effect with the Court and provide copies to the government and defense counsel, so that the Court may direct further proceedings; and

- that the period from the date of the Order until the determination and disposition of Pettiford's mental capacity as outlined in 18 U.S.C. § 4241(d) shall constitute excludable delay under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(A), (h)(1)(F), and (h)(4).

**SO ORDERED** this 30th day of January, 2025.

                                          BY THE COURT:

                                        /s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        United States District Judge