UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ISAAC PETTIFORD,**<br><br>Defendant. | **2:22-CR-20673-TGB-EAS**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER FINDING DEFENDANT INCOMPETENT AND NOT RESTORABLE** |

The Court and the parties are in receipt of a detailed Forensic Evaluation of Isaac Pettiford dated November 12, 2025 by Forensic Psychologist Diana Schoeller Hamilton, concluding that despite several months of treatment and medication at the Federal Medical Center in Devens, Massachusetts, Pettiford "remains incompetent and . . . is not restorable." Hamilton Final Report, p. 23.

The Court held a hearing on March 30, 2026 on the question of whether Pettiford remains incompetent and is unrestorable. For the reasons that follow, based on Dr. Hamilton's reports, her testimony during the hearing, the parties' arguments, and this Court's observations, the Court **FINDS** that Pettiford remains incompetent and is not restorable.

## I. BACKGROUND

More than three years ago, on December 20, 2022, Pettiford was charged with one count of assaulting, resisting, impeding a federal officer or employee in violation of 18 U.S.C. § 111(a). The offense occurred on November 17, 2022 at the Theodore Levin United States Courthouse in Detroit when Pettiford entered the building and is alleged to have lunged at and made contact with a court security officer. As a result of this incident, the officer sustained a bruise to her hand. The offense carries a maximum sentence of eight years because it involved physical contact with the victim of the assault. Although the parties dispute the applicable sentencing guidelines (18-24 months or 37-46 months), Pettiford has been in pre-trial custody for 37 months, since consenting to detention on March 1, 2023.

Pettiford suffers from long-standing delusions, and his mental health condition has caused numerous physicians, counsel, and this Court, to find him incompetent on previous occasions in this case as in other cases. In prior unrelated cases Pettiford has previously been found incompetent at least three times. In this case, the Government first moved for Pettiford to be evaluated regarding his competency on March 8, 2023. ECF No. 8.

On July 7, 2023, Dr. Ryan Nyobo recommended that Pettiford be found incompetent. The Court agreed and committed Pettiford to the custody of the Attorney General to undergo restoration proceedings on

August 15, 2023. ECF No. 15. On March 4, 2024, Bureau of Prisons ("BOP") doctors concluded that Pettiford could be found competent provided that he continued treatment. ECF No. 18, PageID.44. The Court found him competent and ordered his return to this District for trial.

Unfortunately, Pettiford did not remain competent for long. By the time he was transported back to this District to face the charges, he began decompensating again. The parties agreed to a second competency evaluation to be conducted locally. On November 12, 2024, Dr. Daniel M. Mayman, M.D., recommended that Pettiford be found incompetent. After failed efforts to agree to alternative options for treatment in the community, the parties stipulated to Pettiford's incompetency and jointly moved to commit Pettiford—again—to the custody of the Attorney General for another round of restoration proceedings. ECF No. 30. The Court granted the motion on January 30, 2025 to commit Pettiford to the custody of the Attorney General under § 4241(d) for hospitalization and treatment until October 2, 2025 to restore his competency. ECF No. 31.

About four months later, on June 4, 2025, Pettiford was admitted to the Federal Medical Center ("FMC") in Devens, Massachusetts, where Dr. Diana Hamilton, Psy. D., worked to restore Pettiford's competency. Dr. Hamilton provided the Court with monthly reports dated June 30, 2025, August 5, 2025, and September 4, 2025, in which she noted that Pettiford "still display[ed] significant delusional thoughts and auditory hallucinations," but there was "reason to believe that with

3

continued adherence to an antipsychotic medication, Mr. Pettiford [wa]s likely to be restored to competence" by the end of his restoration period. *See, e.g.*, Hamilton Status Report (Sep. 4, 2025), p. 2.

Pettiford's restoration period ended on October 2, 2025. Dr. Hamilton did not request an additional period of time to evaluate Pettiford. But in view of the federal government shutdown which started on October 1, 2025, the Court granted Dr. Hamilton's request for an extension to file her final report. She submitted her report to the Court on November 17, 2025, after the 43-day shutdown ended on November 12, 2025, opining that Pettiford "continues to suffer from a mental illness which renders him unable to understand the nature and consequences of the proceedings against him and assist properly in his defense." Hamilton Final Report, p. 1. She concluded that despite several months of treatment and medication, Pettiford "remains incompetent and . . . is not restorable." *Id.* at p. 23.

On February 19, 2026, the Court ordered the parties to submit position statements regarding whether this Court should hold an in-person hearing to make a judicial determination as to Pettiford's competency and restorability, or whether the parties would stipulate to the results of the Final Report of Dr. Hamilton dated November 12, 2025. ECF No. 57. In this case, defense counsel asked for an in-person hearing to determine competency. ECF No. 58. As no certificate had yet been filed by the director of FMC Devens under § 4246(a) to initiate civil

commitment proceedings, the Court ordered Pettiford's return to this District on March 3, 2026 for an in-person hearing on his competency and restorability. ECF No. 60. The Court held the competency hearing on March 30, 2026, with Pettiford physically present and Dr. Hamilton appearing remotely. *See* Tr., ECF No. 63.

## II. LEGAL STANDARD

"The test for competency of a represented party, either to stand trial or to enter a guilty plea, is whether a defendant has 'sufficient ability to consult with his lawyers and a reasonable degree of rational and factual understanding of the proceedings against him.'" *United States v. Pitts*, 997 F.3d 688, 700 (6th Cir. 2021) (citations omitted).

The procedures related to competency proceedings are set forth in the Insanity Defense Reform Act ("IDRA") of 1984, 18 U.S.C. § 4241, *et seq*. The statutory scheme lays out in detail what happens when there is a medical determination that the defendant *is* restored to competency. Section 4241(e) provides that the Court should hold a "hearing, conducted pursuant to the provisions of section 4247(d), to determine" whether "by a preponderance of the evidence [ ] the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense." Section 4247(d) provides that during a competency hearing, the defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-

examine witnesses who appear at the hearing." *See also* S. REP. 98-225, 236, 1984 U.S.C.C.A.N. 3182, 3418 (explaining that a § 4247(d) hearing must "fully comport with the requirements of due process").

The statute is less clear as to the procedure to follow when there is a medical determination that the defendant remains incompetent and is not restorable. Section 4241(d) indicates a determination must be made that "the defendant's mental condition has not so improved as to permit the proceedings to go forward" before subjecting the defendant to civil commitment proceedings. But the statute does not specify whether "the determination referred to at the end of section 4241(d) is a judicial determination or a medical determination." *United States v. Wheeler*, 744 F. Supp. 633, 639 n.5 (E.D. Pa. July 27, 1990). Nonetheless, making a judicial determination is the "most prudent" procedure. *Id.* at 639. Indeed, the Second Circuit explained that "[o]nly after the mandatory competency evaluation outlined in Section 4241(d) has taken place may the district court—and the district court alone—determine that 'the defendant's mental condition has not so improved as to permit the proceedings to go forward.'" *United States v. Brennan*, 928 F.3d 210, 217 (2d Cir. 2019) (citing § 4241(d)). And the Sixth Circuit emphasized the district court's role under § 4241(d):

> After the initial four-month period, if the district court still finds by a preponderance of the evidence that the defendant is incompetent, the defendant may be ordered to remain in a suitable treatment facility . . . "if the court finds that there is

6

> a substantial probability that within [an] additional [reasonable] period of time he will attain the capacity to permit the proceedings to go forward."

*United States v. Durachinsky*, No. 23-4019, 2025 WL 1833941, at *4 (6th Cir. Apr. 2, 2025), *cert. denied*, 146 S. Ct. 197 (2025). In other words, to "determine[ ] [whether] the defendant's mental condition has not so improved as to permit the proceedings to go forward," the district court must determine (1) if the defendant is "still" incompetent by a preponderance of the evidence (the competency prong), and (2) if there is a "substantial probability that within [an] additional [reasonable] period of time he will attain the capacity to permit the proceedings to go forward" (the restorability prong). *See* § 4241(d).

## III. DISCUSSION

### A. Competency

During the hearing, Dr. Hamilton explained that during the four-month-long restoration period at FMC Devens, Pettiford participated in (1) four 30-minutes meetings with the "Competency Restoration Team" each month, Tr., ECF No. 63, PageID.332, (2) seven of eight "Competency Restoration Groups," described as psycho-legal education courses to "make sure people have a factual understanding" of the legal process and how to assist one's attorney, *id.* at PageID.336, and (3) two interviews—a final competency reevaluation interview and a psycho-social history interview—on September 30, 2025, lasting two hours each, *id.* at PageID.333-34. Dr. Hamilton stated she also interacted informally with

Pettiford on his housing unit, and that he may have met with other psychiatrists every few weeks. *Id.* at PageID.337.

From her observations, Dr. Hamilton opined that "Pettiford is presently suffering from a mental disease"—schizophrenia, continuous— "even in the context of adherence to an antipsychotic medication." Final Hamilton Report, p. 20. During the hearing, Dr. Hamilton confirmed this psychotic disorder diagnosis, noting that common features include "difficulty perceiving the difference between what's really happening and what's not really happening," which typically is a "combination of hallucinations and delusions present for a period [ ] lasting at least six months," along with "disorganized thinking [and] behavior." Tr., ECF No. 63, PageID.325.

She further opined that "Pettiford has a factual but not a rational understanding of the nature and consequences of the proceedings against him" because "[h]is reasoning and legal decision-making remains compromised by psychosis." Final Hamilton Report, p. 22. As to Pettiford's *factual* understanding of the proceedings against him, she noted that Pettiford "expected to enter a plea of not guilty but that he would be willing to consider a plea bargain if his attorney told him it was a 'good deal.'" *Id.* at p. 21. Pettiford listed potential evidence in his case as "a video tape where they say that's me head butting the lady," understanding the evidence against him is "pretty strong" and that there was "only a 5% chance he will be found not guilty." *Id.* at p. 22. He

understood he faced a potential sentence of 37 months. *Id.* at p. 21. Thus, Dr. Hamilton opined Pettiford has "a solid understanding of the legal system." *Id.* at p. 23.

As to Pettiford's *rational* understanding of the proceedings, Dr. Hamilton testified that she had observed a "trend[ ] in the right direction over the first few months" of the restoration period, as Pettiford became "more reluctant to initiate talking about some of his delusional beliefs." Tr., ECF No. 63, PageID.337. Thus, by the time of her last status report, Dr. Hamilton opined Pettiford would likely be restored to competency "with continued adherence to an antipsychotic medication" by the end of the restoration period. Hamilton Status Report (Sep. 4, 2025), p. 2.

But during the competency hearing, Dr. Hamilton explained that two days before the end of the restoration period, on September 30, 2025, during her competency reevaluation interview, she observed that "Pettiford's delusions were still quite present," in fact "more present than [she] realized," as he "spontaneously incorporated delusional content into his answers" regarding decisions in his case, and "used psychotic reasoning to explain why he would not accept a plea bargain." Tr., ECF No. 63, PageID.338; Final Hamilton Report, p. 22. Dr. Hamilton shared that Pettiford stated:

> My brother said don't take any more cops[1] because I'm going to get out and get money and wake up in a car. There is a date by which my eye will fry-2/22/2026. If certain things don't happen, I'm bringing them down, and that will end. I can't wash my clothes because I'm wearing a wire. My clothes are electrified and give off money to people. I'm trying to go to county jail instead of [FCI] Milan to get to shower first so no one sees the moves I'm making. The Air Force wants to destroy it because it's premature.

Final Hamilton Report, p. 22. Thus, Dr. Hamilton opined that Pettiford did not have a rational understanding of the proceedings against him because "[h]is reasoning and legal decision-making remains compromised by psychosis." *Id.*

Finally, due to Pettiford's reliance on delusional beliefs to make legal decisions, Dr. Hamilton deemed Pettiford unable to properly assist in his defense. *Id.* at p. 23. This conclusion is supported by a letter Pettiford sent to his counsel on September 14, 2025, submitted to the Court under seal, stating he believed his eyes would "fry 400 degrees," he is a Captain for the 10th precinct, and he has an "infrared money ground wire key," and asking his counsel to "check [his] story with the DEA." ECF No. 49 (sealed), PageID.269.

Based on Dr. Hamilton's final report and testimony in Court, the Court finds the evidence shows by a strong preponderance that Pettiford

---

[1] Dr. Hamilton believes Pettiford was referring to plea agreements when he used the word "cops." *See* Final Hamilton Report, p. 22. Such an acronym is consistent with the abbreviation for a "**c**hange **o**f **p**lea" hearing, commonly used in state court guilty plea proceedings.

is still "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." § 4241(d).

## B. Restorability

Dr. Hamilton also opined that Pettiford's "delusions are unlikely to recede sufficiently for Mr. Pettiford to set them aside so he can address his legal issues," given the "persistence of his delusions over many years, even in the context of adherence to antipsychotic medication." Final Hamilton Report, p. 23. For this reason, Dr. Hamilton did not seek an extension of the restoration period beyond October 2, 2025.

During the hearing, Dr. Hamilton explained that Pettiford was very "adherent to his medication" over the course of the four-months restoration period. Tr., ECF No. 63, PageID.329. But while the medication "assisted in tuning down . . . some of the acuity of his psychosis," she stated there was "still a significant amount of delusional thinking present that was still . . . interfering with his ability to participate in these proceedings." *Id.* at PageID.329-30. Dr. Hamilton testified that in her opinion, "it did not seem like more time would help Mr. Pettiford become competent." *Id.* at PageID.330. She explained that "[f]our months is a very long time to take medication and it should have given us a response that made him competent." *Id.* She asserted that she was not aware of any treatment available that would create a substantial probability that he could be restored in the *foreseeable* future, noting that "[alt]hough cognitive behavioral therapy can be helpful in treating,

11

managing schizophrenia, that often takes a remarkably long period of time." *Id*. She also noted Pettiford showed "limited interest in identifying or dispelling delusional content." Final Hamilton Report, p. 18.

Dr. Hamilton's conclusion regarding the persistence of Pettiford's delusions over many years is consistent with the Court's observations throughout this case, as Pettiford's competence was restored for a brief period of time in June 2024, before he decompensated again, leading to an unfortunately repetitive cycle of restoration proceedings. Dr. Hamilton's perception that any progress to be gained from cognitive therapy would take a "remarkably long time," such that progress is not "foreseeable," is particularly significant given that Pettiford has already spent more time in pre-trial custody, going through two competency restoration commitment periods, than his sentencing guidelines would have recommended.

Therefore, based on Dr. Hamilton's report and her testimony during the competency hearing, the Court finds that Pettiford is not restorable in the foreseeable future, because there is *not* a "substantial probability that within [an] additional [reasonable] period of time he will attain the capacity to permit the proceedings to go forward." § 4241(d)(2)(A).

To conclude, based on the thorough examination, report, and testimony of Dr. Hamilton, as well as its own observations of Pettiford and evaluation of all the evidence, this Court "still finds by a preponderance of the evidence that [Pettiford] is incompetent." *See*

*Durachinsky*, 2025 WL 1833941, at *4. And, likewise, the Court does not find that "there is a substantial probability that within [an] additional [reasonable] period of time [Pettiford] will attain the capacity to permit the proceedings to go forward." *Id.* (citing § 4241(d)(2)(A)). Therefore, the Court determines that Pettiford's "mental condition has not so improved as to permit the proceedings to go forward." § 4241(d).

## IV. CONCLUSION

For the foregoing reasons, it is the finding of the Court that Pettiford is determined to be **INCOMPETENT AND NOT RESTORABLE** for the foreseeable future. Briefing from the parties regarding next steps, including whether dismissal of the charges is appropriate and the possible initiation of civil commitment proceedings pursuant to § 4246(a), is due April 3, 2026, and the Court will then promptly determine the subsequent course of this case.

**SO ORDERED**.

Dated: April 2, 2026          /s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE

13