UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ISAAC PETTIFORD,**<br><br>Defendant. | **2:22-CR-20673-TGB-EAS**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF NO. 35),**<br><br>**DIRECTING GOVERNMENT TO FILE A PETITION FOR CIVIL COMMITMENT IN A CIVIL MISCELLANEOUS COMPANION CASE IN THIS DISTRICT,**<br><br>**AND ORDERING LOCAL EVALUATION PURSUANT TO 18 U.S.C. § 4246(B)** |

Defendant Isaac Pettiford has been charged with assaulting, resisting, or impeding a federal officer or employee in violation of 18 U.S.C. § 111(a). But Pettiford suffers from long-standing delusions, causing numerous physicians, counsel, and this Court to find him incompetent and not restorable. *See, e.g.*, Apr. 2, 2026 Order, ECF No. 64. Based on Pettiford's incompetence and the lengthy period of his pre-trial detention, Pettiford's counsel has moved to dismiss the indictment. Mot., ECF No. 35. For its part, the Government seeks to initiate federal civil commitment pursuant to 18 U.S.C. § 4246, including a dangerousness evaluation and hearing, because the director of the

Federal Medical Facility ("FMC") in Devens, Massachusetts, in which Pettiford was hospitalized pursuant to 18 U.S.C. § 4241(d), transmitted a dangerousness certificate to the Clerk of this Court on March 16, 2026, a few days after Pettiford left the facility. Supp. Brief, ECF No. 66. Pettiford argues the certificate is not valid, but that if this Court accepts it as validly filed in this District, this Court should order a local evaluation. Supp. Brief, ECF No. 65.

For the following reasons, Pettiford's Motion to Dismiss (ECF No. 35) will be **GRANTED**, effective seven (7) days from the date of this Order. The Government will be directed to file a Petition for Civil Commitment in a miscellaneous civil case companion to this case no later than seven (7) days from this Order. A local § 4246(b) evaluation will be ordered, and, should Dr. Hamilton find that Pettiford's release would pose a danger, the Court will promptly hold a § 4246(c) hearing.

## I. BACKGROUND

On December 20, 2022, Pettiford was charged with one count of assaulting, resisting, or impeding a federal officer or employee in violation of 18 U.S.C. § 111(a). According to the criminal complaint, the offense occurred on November 17, 2022 at the federal courthouse in Detroit when Pettiford entered the building and allegedly lunged at and made contact with a court security officer. Pettiford consented to detention on March 1, 2023 and has been in continuous federal custody for about 38 months. Although the parties dispute the applicable

2

sentencing guideline range (Defendant calculates the range at 18–24 months), the maximum range calculated by the Government is 37–46 months.

### A. First Restoration Period

In prior unrelated cases, Pettiford had previously been found incompetent at least three times. In this case, Pettiford underwent a first round of restoration proceedings between March 8, 2023, when the Government moved for a competency evaluation, ECF No. 8, and March 4, 2024, when the Court found Pettiford's competence to be restored, ECF No. 18, PageID.44. Unfortunately, Pettiford did not remain competent for long. By the time he was transported back to the Eastern District of Michigan to face the charges, he began decompensating again.

### B. Second Restoration Period

Pettiford underwent a second round of restoration proceedings starting on September 4, 2024, when the Government moved for another competency evaluation. ECF No. 26. On November 12, 2024, Dr. Daniel M. Mayman opined that Pettiford was incompetent. The parties jointly requested, and the Court ordered, that Pettiford be committed for a second time to the custody of the Attorney General for hospitalization under 18 U.S.C. § 4241(d) on January 30, 2025. ECF Nos. 30 & 31. About four months later, on June 4, 2025, Pettiford was admitted to the Federal

Medical Center ("FMC") in Devens, Massachusetts.[1] Dr. Diana Hamilton, Psy. D., Forensic Psychologist at FMC Devens, worked to restore Pettiford's competence for the next four months until October 2, 2025. While the Court granted Dr. Hamilton's request for an extension to file her final report in view of the federal government shutdown which started on October 1, 2025, and lasted for 43 days until November 12, 2025, Dr. Hamilton did not request an additional reasonable period of time to evaluate Pettiford.

On November 16, 2025, the Court received a letter from F. J. Bowers, the director of FMC Devens, stating that, in the opinion of Dr. Hamilton, Pettiford "remains incompetent and . . . is not restorable." Hamilton Final Report, p. 23 (on file with the Court). At that time, Dr. Hamilton did not complete the preliminary dangerousness evaluation necessary for the director to certify that an incompetent person's release would pose a danger under 18 U.S.C. § 4246(a). Instead, at the end of her report, Dr. Hamilton suggested what she believed were two possible paths forward:

> If the court maintains the federal charges, the next step required by federal statute is to determine if the defendant can be safely released to the community or if he might meet criteria for civil commitment. This would require a new

---

[1] A few days before Pettiford arrived at FMC Devens, defense counsel filed a Motion to Dismiss the Indictment based on the recurring nature of Pettiford's mental ailments and the length of time he had already spent in pre-trial detention. ECF No. 35.

> forensic evaluation pursuant to Title 18, U.S.C. § 4246. We can complete this evaluation at FMC Devens, but doing so would require a finding from the court that the defendant is not restorable as well as a new court order to complete a risk assessment pursuant under § 4246(b).
>
> If instead the court dismisses Mr. Pettiford's current federal charges, a new forensic evaluation [pursuant to § 4246] would not be required, and Mr. Pettiford would be immediately released from federal custody.

*Id*. at p. 24. Pettiford remained at FMC Devens pending further instruction from this Court. The Court ordered the parties to submit a Joint Scheduling Order to establish a briefing schedule to address next steps following Dr. Hamilton's conclusion that Pettiford was unrestorable. ECF Nos. 51 & 52.

### C.  Steps Following Report on Unrestorability

A month later, to set the first path into motion, the Government filed a Motion for a Dangerousness Evaluation under 18 U.S.C. § 4246(b). ECF No. 53. The Court denied the Motion on February 19, 2026, finding it had no authority to order such an evaluation without a certificate from the director of FMC Devens certifying that (1) Pettiford's release would pose a danger and (2) Michigan authorities have refused to accept Pettiford's care, pursuant to 18 U.S.C. § 4246(a). ECF No. 57, PageID.301–03. The Court explained that under Sixth Circuit precedent, the initial burden is on the director to make those preliminary determinations before a full § 4246(b) evaluation can be ordered. *Id.* (citing *United States v. Baker*, 807 F.2d 1315, 1324 (6th Cir. 1986)); *see*

*also United States v. Coad*, 175 F.4th 1233, 1243 (10th Cir. 2026) ("[T]here can be no § 4246(b) examination and report—or any other § 4246 proceeding—without a § 4246(a) certificate.").

In the same Order, the Court asked the parties whether they would stipulate to Dr. Hamilton's incompetency and unrestorability findings regarding Pettiford, or whether an in-person competency hearing would be necessary. ECF No. 57, PageID.303. On February 26, 2026, Pettiford declined to stipulate to the findings and requested to be present for the competency hearing. ECF No. 58.

Still, by March 3, 2026—five months after the end of Pettiford's restoration period, four months after Dr. Hamilton's report, and two weeks after the Court advised the parties of the need for a BOP certificate regarding dangerousness—no certificate had been filed to stay Pettiford's release. Therefore, without a certificate in hand or any indication that a certificate would be filed, the Court ordered Pettiford's return to the Eastern District of Michigan for further proceedings, including a hearing on Pettiford's competency and restorability, and a decision on the pending Motion to Dismiss. ECF No. 60.

On March 6, 2026, Dr. Hamilton confirmed to the Court and the United States Marshals Service ("USMS") via email that there was no hold on Pettiford's return and that the Court's March 3, 2026 Order "should be sufficient to move things along." The USMS then initiated

Pettiford's return on March 9, 2026. Pettiford departed FMC Devens on March 12, 2026 to the Eastern District of Michigan.

### D. Dangerousness Certificates

But on March 16, 2026, Dr. Hamilton emailed the Court two documents. The first one, dated March 16, 2026, states that:

> [Dr. Hamilton] conducted a preliminary violence risk assessment to determine whether there was sufficient cause for a certificate of dangerousness to be filed. Based on the information reviewed and after conferring with the risk assessment consultant, [Dr. Hamilton] recommended the Warden at FMC Devens certify Mr. Pettiford as dangerous.

Hamilton Prelim. Risk. Ass. Report, p. 1 (on file with the Court). Dr. Hamilton later testified that the assessment consisted of evaluating 15 of the 20 Historical Clinical Risk ("HCR") assessment factors. Tr., ECF No. 63, PageID.354–55. Consistent with Dr. Hamilton's letter, the second document, titled "CERTIFICATE OF DANGEROUSNESS DUE TO MENTAL DISEASE OR DEFECT," received on March 16, 2026, but signed by the director of FMC Devens on March 11, 2026, states that:

> This is to advise you that ISAAC PETTIFORD, Register Number 28613-039, is a patient currently housed in the Mental Health Unit at the Federal medical Center in Ayer, Massachusetts ("FMC Devens"), pursuant to 18 U.S.C. § 4241(d), has undergone an initial forensic assessment to determine whether he meets criteria for certification under 18 U.S.C. § 4246(a). The FMC Devens Risk Consultation indicated in a preliminary forensic assessment that Mr. Pettiford is currently suffering from a mental disease or defect, as a result of which his release would create a

7

> substantial risk of bodily injury to another person or serious damage to the property of another.

Danger. Cert. p. 1 (on file with the Court). The Warden also certified that:

> FMC Devens Social Work staff have contacted Mr. Pettiford's state of domicile, Michigan, and have determined that suitable arrangements for state custody and care are not presently available.

*Id*. But Pettiford had already left FMC Devens on March 12, 2026, and arrived back to the Genesee County Jail in the Eastern District of Michigan sometime around March 18, 2026. As a result, the certificate was only transmitted via email to the Clerk of this Court, and has not been filed in this District, where Pettiford is presently confined, or in the District of Massachusetts, where FMC Devens is located.

This Court then held the competency hearing as planned on March 30, 2026, *see* Tr., ECF No. 63, and issued a written order finding Pettiford incompetent and unrestorable on April 2, 2026, *see* ECF No. 64. During the hearing, the Court inquired about the certificate it received on March 16, 2026. Dr. Hamilton testified that the certificate was not filed in the District of Massachusetts because "we know that if we file the certificate in the District of Massachusetts, they will not accept it because Mr. Pettiford i[s] not in this district right now." Tr., ECF No. 63, PageID.352. Dr. Hamilton also testified that the certificate was "not accurate," because "[they] have not yet been able to reach out to Michigan." *Id*. at PageID.347. She explained that she received an email from the Social Work staff assigned to Pettiford's case stating that the social worker

8

"attempted to meet with [Pettiford] twice to have him sign paperwork so that she could reach out to the Interstate Compact Coordinator in Michigan, but through no fault of Mr. Pettiford's, . . . she was not able to have him sign that paperwork." *Id.*

At the Court's urging, the next day, on March 31, 2026, Dr. Hamilton transmitted to the Clerk of this Court an updated dangerousness certificate, identical to the first one, but signed and dated by the director of FMC Devens on March 31, 2026. Dr. Hamilton also sent a letter to the Court, explaining:

> In light of yesterday's discovery that FMC Devens had not yet inquired as to whether suitable arrangements for custody and care were available for Mr. Pettiford in the state of Michigan, a social worker at FMC Devens emailed Nick Norcross, MPA, State Assistant Administrator, State Hospital, Michigan DHHS on March 30, 2026, to pursue this matter. On March 31, 2026, the FMC Devens social worker received an email response from Mr. Norcross wherein he wrote, "Upon review, it is determined that there is no compelling reason to agree to a request for the transfer of Mr. Pettiford to an inpatient psychiatric hospital operated by the Michigan Department of Health & Human Services. The request is denied." As such, the Warden at FMC Devens subsequently signed a Certificate of Dangerousness due to Mental Disease or Defect on March 31, 2026. Please rescind the previous Certificate of Dangerous due to Mental Disease or Defect signed March 11, 2026.

Hamilton Update Letter, p. 1 (on file with the Court).[2]

---

[2] The March 11 and March 31 certificates will be collectively referred to as a single "certificate" hereinafter unless specified otherwise.

Pettiford argues neither dangerousness certificate is valid: the first is incorrect because Michigan authorities had not been contacted at the time of the March 11 certificate, and the second is incorrect because Pettiford was not "currently housed" at FMC Devens at the time of the March 31 certificate.

In light of the disputed validity of the dangerousness certificates, the Court ordered supplemental briefing regarding whether this Court could construe either certificate as validly filed in this District, triggering further § 4246 proceedings, and if so, whether the Court should order a dangerousness evaluation pursuant to § 4246(b) to be conducted at FMC Devens or locally now that Pettiford has been returned to this District.

Pettiford argues that without a valid certificate, the Court should address the pending Motion to Dismiss and release Pettiford, or in the alternative, order a local dangerousness evaluation and hold a dangerousness hearing in this Court without further commitment to a federal medical facility. Supp. Brief, ECF No. 65.

The Government argues that the Court should return Pettiford to FMC Devens so that the certificate may be filed in the District of Massachusetts and that the evaluation, if ordered, should take place at FMC Devens. Supp. Brief, ECF No. 66.

## II. LEGAL STANDARD

The procedures related to competency proceedings are set forth in the Insanity Defense Reform Act ("IDRA") of 1984, 18 U.S.C. § 4241, *et*

*seq.* Those procedural guidelines comport with due process requirements that must be followed before committing an individual. *Baker*, 807 F.2d at 1321–22. In describing the due process concerns associated with civil commitment, the Sixth Circuit stated:

> The civil commitment of an individual into a mental hospital is a significant deprivation of liberty, particularly when that commitment is of indefinite duration; such a deprivation, therefore, must be accompanied by procedural safeguards which adhere to due process requirements.

*Id.* at 1321.

At this stage of the proceedings, where Pettiford's hospitalization period under 18 U.S.C. § 4241(d) has ended, and the Government is seeking to initiate civil commitment proceedings pursuant to § 4246, this Court need only concern itself with the interplay between these two provisions. After the court commits a defendant to the custody of the Attorney General for restoration proceedings, Section 4241(d) provides that:

> The Attorney General shall hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until—

11

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d). Here, the Court has determined that Pettiford's mental condition has not so improved as to permit the proceedings to go forward. Apr. 2, 2026 Order, ECF No. 64. The Court will therefore review Section 4246, which governs the situation where hospitalization of a person may be appropriate when the person is otherwise due for release but suffering from a mental disease or defect.[3] Section 4246(a) provides as follows:

(a)Institution of Proceeding.—

If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental

---

[3] Section 4248 is not relevant, as it covers civil commitment of a "sexually dangerous person."

condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

18 U.S.C. § 4246(a). Furthermore, "[p]rior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4246(b).

## III. DISCUSSION

### A. Whether Dismissal Based on Incompetence is Appropriate

"[A] criminal defendant may not be tried unless he is competent," *Pate v. Robinson*, 383 U.S. 375, 378 (1966), and cannot plead guilty unless he does so "competently and intelligently." *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938). Dismissal is therefore appropriate in the case of an

13

individual deemed incompetent. *United States v. Berry*, 2019 U.S. Dist. LEXIS 226814, at *7 (E.D. Mich. Dec. 17, 2019) (Lawson, J.); *see also United States v. Bergrin*, 885 F.3d 416, 419 (6th Cir. 2018) (upholding the district court's "decision to dismiss charges on incompetence grounds under § 4241" without prejudice). The Court has determined that Pettiford is incompetent and unrestorable. *See* Apr. 2, 2026 Order, ECF No. 64. Consequently, he may not be tried on the charge consistent with due process, and the indictment must be dismissed.

A related question is whether the dismissal should be with or without prejudice. This issue is raised by Pettiford's motion, filed a year ago, on May 30, 2025, because it seeks to dismiss the indictment *with prejudice*. *See* Mot., ECF No. 35; Supp. Brief, ECF No. 36. That motion was filed a few days before Pettiford was admitted to FMC Devens to begin his § 4241(d) hospitalization period. In considering this issue, the Court is cognizant of the fact that, as of the date of this Order, Pettiford has been in pretrial custody for more than 38 months. Even accepting the Government's guideline calculations, this time period meets the lower end of his sentencing guideline range (37–46 months). Moreover, if the charges were dismissed *without* prejudice based on Pettiford's incompetence, and if the Government were to reinstate criminal proceedings for the instant offense in the future, the time Pettiford already spent in pretrial custody would *not* be credited against a potential future sentence. *See United States v. Bradley*, 112 F.4th 1132,

14

1134 (7th Cir. 2024) (noting that, in contrast to individuals who are restored to competency who "will receive credit against the sentence for the time in custody, just as other pretrial detention is credited or otherwise taken into account," delays in restoration proceedings are "most important for people who are *not* restored to competence," such that those individuals "should be released promptly or referred for commitment proceedings") (emphasis in original). Under these circumstances, the prospect of dismissing without prejudice and allowing the charges indefinitely to loom over an individual who is unable to defend himself competently—where he would not receive credit for three years in pre-trial custody—would be an affront to that person's due process rights. *See Jackson v. Indiana,* 406 U.S. 715, 740 (1972) (finding that there is a "denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence").

This due process concern is heightened in view of Pettiford's persistent and cyclical mental ailments, which, even in the context of adherence to antipsychotic medication, have prevented him from attaining competency—thereby making it likely that the procedures required by the IDRA would again subject him to repeated periods of lengthy pretrial commitment in federal medical facilities where he would be housed with convicted individuals, potentially again for a period of

15

time which could exceed his possible sentence. This kind of "indefinite commitment" violates due process and should not be allowed.

Therefore, considering that Pettiford has already served as much or more time in pretrial detention as he would likely have served in custody if he were competent and already sentenced, the Court will grant Defendant's Motion to Dismiss (ECF No. 35) and dismiss the indictment with prejudice. The dismissal will be effective seven (7) days from the date of this Order, as explained below.

## B. Whether Pettiford is Subject to Civil Commitment Proceedings

After dismissal of the charges against Pettiford, "[a]ny further restraint on [his] liberty, such as civil commitment, would be subject to other statutory and constitutional constraints." *United States v. Quintero*, 995 F.3d 1044, 1058 (9th Cir. 2021). In other words, Pettiford is "due for release," but for proper institution of civil commitment proceedings staying his release pursuant to § 4246(a). *See United States v. Charters,* 829 F.2d 479, 486 (4th Cir. 1987), *on reh'g,* 863 F.2d 302 (4th Cir. 1988) ("It is only upon compliance with the procedures, under § 4246, that federal detention can be continued after the time allotted by section 4241 has expired[.]").

### 1. Dangerousness Certificate

Pursuant to the Insanity Defense Reform Act ("IDRA"), to institute § 4246 civil commitment proceedings against a person "due for release,"

16

the director of the federal medical facility in which the person is hospitalized must certify that (1) the person is mentally ill, (2) as a result of their mental illness, their release poses a danger to people or property, and (3) no State facility can care for the person. 18 U.S.C. § 4246(a); *see also Baker*, 807 F.2d at 1324 (noting that "the initial burden . . . to make the necessary determinations" is placed on the director of the facility). The purpose of the certificate is "to stay the defendant's release pending completion of the [§ 4246] procedures . . . and to notify the defendant as to why he is being held in custody longer than the initial commitment period." *United States v. Wheeler*, 744 F. Supp. 633, 637 (E.D. Pa. July 27, 1990).

While the IDRA does not provide express *temporal* limitations regarding when to file the § 4246(a) certificate, it does provide express *custodial* limitations. Section 4246(a) specifies that the director can file a certificate staying the release of only three categories of incompetent individuals "hospitalized" in the facility: those "in the custody of the Bureau of Prisons whose sentence is about to expire;" those "who ha[ve] been committed to the custody of the Attorney General pursuant to section 4241(d);" or those "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." 18 U.S.C. § 4246(a). Furthermore, Section 4246(a) requires that "the director of [the] facility in which [the] person is hospitalized . . . shall transmit the certificate to the clerk of the court for the district *in which*

17

*the person is confined*," and the clerk shall send a copy of the certificate "to the clerk of the court that *ordered the commitment*." *Id*. (emphasis added). In *Baker*, the Sixth Circuit ruled that "a certificate must be filed in, and a section 4246 hearing must be held in, the district in which the individual is confined, not the district in which he had initially been charged with an offense." 807 F.2d at 1324; *see, e.g.*, *United States v. Foy*, 803 F.3d 128, 135 n.5 (3d Cir. 2015) (stating that the court of commitment in Pennsylvania "arguably . . . lacked authority to initiate the preliminary § 4246 commitment proceedings because it was not 'the court for the district in which [the defendant was] confined' when the Court entered the order as he was confined in FMC Butner [in North Carolina] at that time").

If the director transmits the certificate while the person "is hospitalized" in the director's facility, it is logical that the "district in which the person is confined" would be the same as the district in which the federal medical facility is located. But the situation becomes complicated when, as here, the certificate is completed while the person is at the FMC, but is not transmitted until *after* the person has already left the FMC and returned to the prosecuting district. At that point, the director may no longer certify that the person "is hospitalized" at the FMC, and the district where the FMC is located is no longer the "district in which the person is confined."

18

Here, as described in detail in the Background section, Pettiford was committed to the custody of the Attorney General, which designated him to FMC Devens, for competency restoration treatment under § 4241(d)(1). The treatment period ended on October 2, 2025, without any request for extension beyond the statutory four-month limit. But a certificate was never filed in the District of Massachusetts, where FMC Devens is located. The Court ordered Pettiford's return to the prosecuting district for further proceedings five months later, and on March 12, 2026, Pettiford left FMC Devens and returned to the Genesee County Jail in Michigan. But on March 16, 2026, the BOP transmitted to the Clerk of this Court in the Eastern District of Michigan a purported dangerousness certificate signed by the director of FMC Devens and dated March 11, 2026—that is the day *before* Pettiford left the facility. That certificate was eventually amended on March 31, 2026 after Michigan authorities were properly contacted. This raises the question whether this Court in the Eastern District of Michigan can accept the director's attempt to transmit the § 4246(a) certificate to trigger further civil commitment proceedings.

### (a)   Whether the Certificate Was Timely Issued

Section 4246(a) specifies that the director can file a certificate staying the release of individuals who are "hospitalized" in the director's

19

facility "who ha[ve] been committed to the custody of the Attorney General pursuant to section 4241(d)."[4]

The parties dispute whether at the time the Court received the first certificate on March 16, 2026 (dated March 11, 2026), Pettiford could be considered a person "hospitalized" at FMC Devens who "has been committed to the custody of the Attorney General pursuant to section 4241(d)." *See* 18 U.S.C. § 4246(a). Pettiford argues the certificate was untimely because his § 4241(d) four-month restoration period ended on October 2, 2025, without a request or order to extend the treatment period, and the dangerousness certificate was not transmitted to the Clerk of this Court until more than five months later. The Government

---

[4] The director can also file a certificate staying the release of individuals who are hospitalized in the facility "against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person." 18 U.S.C. § 4246(a). Pettiford argues that dismissal of the charges due to Pettiford's incompetence would not give the director renewed authority to file the certificate, because Pettiford "is [not] hospitalized" at FMC Devens anymore—the only custodial requirement under the "dismissed-charges" provision, which is unrelated to the BOP or Attorney General's legal custody over the individual or to the individual's incompetency. To ensure continuity of custody, courts utilizing this "dismissed-charges" provision have used their "inherent powers, including the power to stay proceedings, which they can wield to respond to specific problems when doing so does not contradict any express rule or statute." *See United States v. Williamson,* 161 F.4th 803, 809 (D.C. Cir. Dec. 12, 2025) (finding order staying dismissal of indictment pending dangerousness certification to be a "reasonable response to the specific problem of making the 'dismissed-charges' category in § 4246(a) administratively workable").

argues that § 4246(a) "does not require that the certification occur before transportation" (here, March 12, 2026), "before a judicial finding of unrestorability" (here, April 2, 2026), "or within a particular window of custody." Supp. Brief, ECF No. 66, PageID.415. But "custodial authority over a defendant need[s to] be active and legitimate for § 424[6] to apply." *United States v. Wayda*, 966 F.3d 294, 304 (4th Cir. 2020).

There is no dispute Pettiford's treatment period ended on October 2, 2025, after the four-month restoration period ended without any request for extension, or at the latest on November 16, 2025, when Dr. Hamilton found Pettiford unrestorable. *See Coad*, 175 F.4th at 1239 (noting that the "'additional reasonable period' of hospitalization ends at the earliest of three times," including "when any further time trying to restore the defendant's competency becomes unreasonable").[5]

---

[5] While the Tenth Circuit found that the defendant's § 4241(d) hospitalization period became unreasonable (and therefore ended) when the *district court* found the defendant incompetent and unrestorable, *see Coad*, 175 F.4th at 1241, this is not to say that only a judicial finding of unrestorability can end the hospitalization period. *See United States v. Curbow*, 16 F.4th 92, 111 (4th Cir. 2021) (holding that the relevant period was the "period between [the medical examiner's] unrestorability determination and the . . . filing of his § 4246 certificate"). While the district court in *Coad* was the first one to find the defendant unrestorable because the BOP deemed him restored to competency, Dr. Hamilton in the case at hand was the first one to find Pettiford to be incompetent and unrestorable in her November 16, 2025 report at the end of the four-month period. No further treatment has been authorized or taken place since then. Moreover, the Sixth Circuit in *Baker* required a judicial finding to extend hospitalization beyond the four-month period when

The problem is that neither § 4241(d) nor § 4246(a) provide an explicit timeframe for filing a dangerousness certificate following the unrestorability finding. While the Government cites to *United States v. Godinez-Ortiz*, 563 F.3d 1022, 1031 (9th Cir. 2009), for the proposition that "nowhere does § 4246 state that the director's certificate must be filed *during* the person's commitment under § 4241 or *before* the § 4241(d) evaluation period ends," the Government fails to account for the specific context of this decision and approaches taken by other Circuits.

When interpreting the interplay between §§ 4241(d) and 4246(a), the Fourth Circuit, which hears most of the § 4246 disputes arising out of FMC Butner in North Carolina, worried that "[i]f we were to find . . . that an individual is committed to the custody of the Attorney General and can be made subject to § 424[6] proceedings at any time until the individual's charges are dismissed, we would effectively authorize indefinite commitment." *Wayda*, 966 F.3d at 306. Thus, it held that "the Government [is] required to certify [a defendant] as a '[ ] dangerous person,' if it want[s] to do so, *before* his period of commitment to the

_____

there *is* a substantial probability that a person can be restored in the foreseeable future, but did not require a judicial finding to end the hospitalization period. *See* 807 F.2d at 1324. Therefore, further hospitalization after Dr. Hamilton's unrestorability finding without "further action" would be unreasonable under both *Coad* and *Baker*.

22

Attorney General's custody for treatment ha[s] ended" under § 4241(d). *Id.* at 305 (emphasis added).[6]

The Fourth Circuit's approach is consistent with the Sixth Circuit's binding decision in *Baker* holding that a district court has "no authority to confine" a defendant "beyond the statutorily authorized four months" period under § 4241(d) without "further action . . . taken to extend [the] commitment," 807 F.2d at 1325, such as a request and order to extend the restoration period or a dangerousness certificate staying the release. The *Baker* court further warned district courts against "operating under the incorrect assumption that [an incompetent defendant] could be retained in federal custody until it was certified to the court" that the state of domicile would accept his or her care, *id.* at 1324, or his or her release would not pose a danger.

---

[6] The Government argues that reliance on *Wayda* is "misplaced" because *Wayda* addressed § 4248, not § 4246. Supp. Brief, ECF No. 66, PageID.415. However, the Fourth Circuit held that "[a]lthough *Wayda* addressed the timeliness of a certificate filed under § 4248, which governs the commitment of sexually dangerous individuals, its reasoning applies equally to § 4246" because "[t]he two provisions are nearly identical in structure and language, differing only in the category of dangerousness at issue." *United States v. Berry*, 142 F.4th 184, 190 n.1 (4th Cir. 2025). Furthermore, Dr. Hamilton testified that FMC Devens, located in Massachusetts, within the First Circuit, recently changed its internal policies regarding the dangerousness certification process to comply with *Wayda*, 966 F.3d 294. *See* Tr., ECF No. 63, PageID.350.

Generally, it appears that when a person is committed and hospitalized under § 4241(d) for a period of four months, there is a fixed timeline, and the BOP can plan to complete the competency evaluation as well as preliminary dangerousness evaluation during that fixed § 4241(d) period or at the end of it when preparing the final report. *See United States v. Dalasta*, 856 F.3d 549, 554 (8th Cir. 2017) ("[C]ommitment under § 4241(d) provides the Attorney General's medical experts an opportunity to evaluate the defendant's dangerousness if he were released from custody after a § 4246(a) hearing."). As Dr. Hamilton testified in Pettiford's case, the preliminary dangerousness evaluation does not require additional time with the defendant and can be prepared in just a few days based on the records already available. Tr., ECF No. 63, PageID.354–55.

It is in the situation where the Government did *not* have a "reasonable opportunity" to conduct a precertification evaluation, such as when the district court dismisses the charges before the end of the four-month period (*Berry*, 142 F.4th at 189), denies the government's request to extend hospitalization beyond the four-month period (*Godinez-Ortiz*, 563 F.3d at 1031), or disagrees with the medical finding of competency (*Coad*, 175 F.4th at 1235), that the Fourth, Ninth, and Tenth circuits[7]

---

[7] Defense counsel questions whether those circuits' "reasonable opportunity" approach comports with *Baker*'s mandate that without "further action . . . taken to extend [the] commitment," the district court

have interpreted § 4241(d) to "allow the government to maintain custody for some reasonable period of time" for the director to "determine whether § 4246 commitment is appropriate." *See Berry*, 142 F.4th at 192.[8]

But even in such circumstances, the Government should "strive to certify" individuals "in a time frame that eliminates or at least minimizes the time spent as an incompetent, unrestorable person waiting for a

---

has no authority to confine a defendant. 807 F.2d at 1325. But in evaluating whether due process was violated in *Baker*, the Sixth Circuit did note that courts must generally consider "the nature of the liberty interest at stake, the 'risk of an erroneous deprivation of such interest' when certain procedures are used, and the government's interest in utilizing the procedures being challenged." *Id.* at 1321-22. And the Sixth Circuit recognized that even when the district court lacked authority to confine an individual under § 4241(d) beyond the statutorily-authorized four-month without further action, once a different district court—outside of the Circuit—received the § 4246 certificate staying any release and starting civil commitment proceedings, the appellate court lacked authority to release the person. *Id.* at 1325. Thus, consideration of this "reasonable opportunity" approach is warranted.

[8] *See, e.g.*, *Berry*, 142 F.4th at 192 ("If the government can no longer maintain custody under § 4241 for any purpose once charges are dismissed, the defendant could not be 'subject to the provisions of section 4246' at the end of his hospitalization because the government would have no opportunity to conduct a dangerousness evaluation or prepare the required certification."); *see also Godinez-Ortiz*, 563 F.3d at 1031 ("Under the facts of this case, if the District Court had not ordered Godinez-Ortiz returned to the facility" after denying the government's request to extend the § 4241(d) treatment period and dismissing the charges, "no opportunity for such a determination would have existed."); *see also Coad*, 175 F.4th at 1235 (affirming district court's order returning defendant to the facility for a preliminary dangerousness evaluation after the examiner deemed the individual competent but the court found him unrestorable).

[dangerousness] determination," especially in the case of individuals "who have not been convicted of a crime," so as to not risk "indefinite commitment" in violation of due process. *Wayda*, 966 F.3d at 305-08 ("[T]he window to file a § 424[6] certification cannot be unlimited."); *see also United States v. Timms*, 664 F.3d 436, 453 n.14 (4th Cir. 2012) ("[I]t may be that a substantial and unjustified delay between those periods"—anticipated release and certification—"could be appropriately attributed to the [g]overnment such that it constitutes a due process violation in a future case."). This principle should apply with even greater force to unconvicted individuals who have already spent as much time in pre-trial custody than they would have under their likely sentence, like Pettiford. *See* Tr., ECF No. 63, PageID.359 ("In the Federal Bureau of Prisons, civilly committed people live among sentenced people, they are not separated.").

Furthermore, while district courts may "ha[ve] the inherent power to order a defendant's hospitalization for possible certification within a reasonable time after the defendant reaches the 'subject to' language" under § 4241(d)], rather than under § 4246(b), *Coad*, 175 F.4th at 1240-41, it remains a discretionary tool, which courts need not use. *See, e.g.*, *Bergrin*, 885 F.3d at 419 (noting that district court dismissed charges and released defendant after disagreeing with medical finding of competency because defendant had been in pre-trial custody for longer than his sentencing guidelines would have recommended); *United States v. Pano-*

26

*Flores*, 784 F. Supp. 3d 960, 964-65 (W.D. Tex. May 27, 2025) (dismissing charges and releasing defendant after disagreeing with medical finding of competency because there had been unconstitutional delays in transportation and defendant had already spent double the time in pre-trial custody than under the top of his sentencing guidelines); *Wheeler*, 744 F. Supp. at 637 (noting that, because it never received a certificate from the director of the federal medical facility at the end of the § 4241(d) hospitalization period, the court discharged the defendant from the facility without ordering the preliminary evaluation).

Here, the Government had ample opportunity to preliminarily evaluate Pettiford for dangerousness, and in any event, failed to "strive to certify" Pettiford in a timely manner—even after the Court encouraged the Government to do so. Pettiford remained at FMC Devens pending further action for five months until the BOP finally attempted to file a certificate on March 16, 2026.

First, unlike in *Godinez-Ortiz*, *Coad*, or *Berry*, where the § 4241(d) restoration period was cut short, not extended as requested, or the medical findings of competency were not accepted, Dr. Hamilton found Pettiford *in*competent and unrestorable after the anticipated end of the statutory four-month period, and did not request to extend the treatment period. She testified that she was able to preliminarily evaluate Pettiford for dangerousness in just a few days (if not hours) based on the records she collected during the prior restoration period. Nothing suggests she

27

could not have completed this preliminary evaluation during the two weeks the Court gave her to write the report following the end of the hospitalization period and the federal government shutdown.

Second, while Dr. Hamilton testified that FMC Devens recently changed their internal policies regarding the dangerousness certification process, which caused confusion and delay on their end, the Court had explicitly told the Government on February 19, 2026—close to five months after Pettiford's § 4241(d) period had ended—that the director's certificate is what would trigger further § 4246 proceedings, including a dangerousness evaluation and hearing, and that without such a certificate, Pettiford would be returned to the prosecuting district. The Court instructed so even though "nothing in section 4246(a) states or implies that the director of the facility must be ordered by the court to perform his statutory burden of making the preliminary determination of dangerousness." *Wheeler*, 744 F. Supp. at 638.

By that point, time was most clearly of the essence. But still without a certificate in hand, the Court ordered Pettiford's return to the prosecuting district two weeks later. It is only after the Court ordered his return that the wheels finally started to turn: Dr. Hamilton completed the preliminary dangerousness assessment in a matter of days without interviewing Pettiford again, the social worker attempted to obtain Pettiford's signature to contact state authorities, and the director signed the purported certificate on March 11, while Pettiford was apparently

28

still at FMC Devens. Nonetheless, the BOP failed to submit the certificate to the District of Massachusetts before Pettiford left the facility, and was forced to submit the certificate to the prosecuting court in the Eastern District of Michigan in an attempt to stay the release on March 16, 2026. Even then, the certificate they did submit to this Court contained significant factual errors, calling into question its validity, as explained below, and requiring the submission of a corrected certificate on March 31, 2026—that is 6 months after the end of the restoration period on October 2, 2025, 4.5 months after Dr. Hamilton's § 4241(d) report from November 16, 2025, 1.5 months after the Court informed the parties on February 19, 2026 that Pettiford would be returned to the prosecuting district absent a certificate, 4 weeks after the Court ordered his return on March 3, 2026, and 2.5 weeks after Pettiford left FMC Devens on March 12, 2026.

Thus, while the Government asks the Court to return Pettiford to FMC Devens so that the certificate could be filed in the District of Massachusetts, such additional encroachment into Pettiford's due process rights is not justified. When the § 4241(d) period ends after four months as anticipated, without a request to extend treatment, and the director does not promptly file a certificate for five months, leading to the return of the defendant to the prosecuting district, and the subsequent dismissal of the charges based on incompetence, it cannot be said that

29

the director did not have a "reasonable opportunity to seek certification" under *Berry*.

**(b)    Whether This Court Can Accept the Untimely Certificate**

Nonetheless, while the Court would be justified in ordering Pettiford's release after dismissing the charges in the *absence* of any certificate,[9] the Court *did* receive a purported dangerousness certificate from the director of FMC Devens prepared while Pettiford was still housed at FMC Devens, albeit in an untimely manner. As the Fourth Circuit noted, while "protection of the defendant's rights" is one of the "central motivating factors behind . . . civil commitment procedures," so is "protection of the public." *Wayda*, 966 F.3d at 307; *see also Baker*, 807 F.2d at 1321-22 (noting that in evaluating whether due process was violated, courts must consider "the nature of the liberty interest at stake, the 'risk of an erroneous deprivation of such interest' when certain

---

[9] *See, e.g.*, *United States v. Carter*, 583 F. Supp. 3d 94, 104 (D.D.C. Jan. 27, 2022) (noting that "[t]he [c]ourt tends to agree" that "civil commitment is unripe under federal law . . . as pursuing federal commitment requires a certification of dangerousness from "the director of [the] facility in which a person is hospitalized," 18 U.S.C. § 4246(a), which the government has not obtained"); *United States v. Baker*, 2010 WL 1742222, at *3 (W.D. Ark. Apr. 29, 2010) ("While the statute is silent as to precisely what course of action is to be taken if a 'certificate of dangerousness' be not issued, the Court believes it is fairly to be inferred from the language of the statute that, in the absence of same, the defendant must be released."); *United States v. Patterson*, 2025 U.S. Dist. LEXIS 210894, at *21 (E.D. La. Oct. 27, 2025) (noting that without a certificate, the court had "no further authority to continue to 'stay the release'" of the person).

procedures are used, and the government's interest in utilizing the procedures being challenged").

Under the facts of this case, it is appropriate to construe the certificate as filed in the Eastern District of Michigan, where Pettiford is presently confined.[10] The Government's own online Criminal Resource Manual refers to *Wheeler*, 744 F. Supp. at 637, for the position that while a dangerousness hearing is "ordinarily" held in the court of confinement, the court of commitment may have "authority to conduct such a hearing, where the director's certification was never made."[11] *See also United States v. Bonin*, 541 F.3d 399, 401 (5th Cir. 2008) ("Section 4246(a) establishes the director's certification as a necessary prerequisite to a dangerousness hearing; without the certification, a court *ordinarily* lacks statutory authority to conduct the hearing.") (emphasis added). And in prior briefing, Pettiford asked this Court to follow *Wheeler*'s approach in

---

[10] Both parties envision that if the Court finds the certificate to be valid, as further explained below, this Court could order further proceedings under § 4246. *See* Def. Supp. Br., ECF No. 65, PageID.402 ("Assuming a valid certificate, which triggers a mandatory hearing, the Court . . . should enter an order . . . [that] a dangerousness hearing should be scheduled, evaluations should be ordered[.]"); Gov. Supp. Br., ECF No. 66, PageID.419 ("As a certificate of dangerousness has been properly filed, . . . [t]he statute requires that the Court proceed to a dangerousness determination, . . . and the filing of the certificate stays the defendant's release pending completion of those proceedings.").

[11] *See* DOJ's Criminal Resource Manual. See CRM 1-499, 66, Indefinite Commitment of Incompetent Defendants Who Are Dangerous, https://www.justice.gov/archives/jm/criminal-resource-manual-66-indefinite-commitment-incompetent-defendants-who-are-dangerous.

the absence of a certificate. *See* Resp., ECF No. 54, PageID.290 ("*Wheeler* marks a path to a just end in this case.").

In *Wheeler*, 744 F. Supp. at 639, an incompetent defendant was similarly returned to the prosecuting district in the Eastern District of Pennsylvania without a certificate. While that court *never* received a certificate, it noted that where it is "unclear whether the Federal Medical Center fulfilled [its] responsibility" to make the preliminary determination of dangerousness, the court may have "an obligation to make a determination as to whether defendant's release is likely to create a substantial risk of danger to society." *Id*. Therefore, instead of sending the individual back to the federal medical facility to obtain the certificate, the court ordered a local dangerousness evaluation and scheduled a hearing pursuant to § 4246(b)-(d) to occur in the prosecuting district. *Id*.

It is doubtful that the Sixth Circuit would approve of *Wheeler*'s exact approach, given the Sixth Circuit's emphasis on the need for a dangerousness certificate to justify further detention of an individual otherwise due for release, and the need for courts to abstain from retaining custody over an individual when a certificate is not filed. *Baker*, 807 F.2d at 1324 ("[A] section 4246 hearing cannot be conducted and a section 4246 commitment order cannot be issued until it has been certified to the court that the state *will not* accept the individual."). But Pettiford's case alleviates such concerns because the director here *did* submit a certificate to the prosecuting court—now the court of

confinement—precisely because the Government failed to timely file the certificate with the District of Massachusetts before Pettiford left FMC Devens. Thus, unlike the court in *Wheeler*, this Court no longer needs to guess whether the director would certify that Pettiford's release would pose a danger or that Michigan would refuse responsibility for his care. And, it would not contravene the statute, where most references to "the court" in § 4246 clearly refer to the court of confinement that received the certificate, with the exception of one reference specifying that a *copy* of the certificate must be sent to "the court that ordered the commitment." § 4246(a). While this Court is the one that ordered the commitment, it also is the one that received the certificate, and the one where Pettiford is presently confined.

This is not to say that *any* certificate transmitted to the prosecuting court after a defendant leaves a federal medical facility can be accepted under this approach. What transpired in Pettiford's case supports the conclusion that for an untimely certificate to be accepted by the prosecuting court outside the district of former hospitalization, the certificate must, *at the very least*, have been completed while the defendant was *still* in the physical confines of the federal medical facility. Authorizing an untimely certificate to be prepared and filed *after* the individual has left the FMC would fly in the face of any limiting temporal or custodial principles enshrined in §§ 4241 and 4246. Thus, under the facts of this case, the § 4246(a) certificate completed when Pettiford was

33

still housed at the federal medical facility, but submitted to the prosecuting court after he permanently departed the federal medical facility, can trigger § 4246 proceedings in the prosecuting court that has become the "district in which [Pettiford] is [now] confined." This does not render the certificate timely, but it permits the Court to treat the delayed filing as sufficient to initiate § 4246 proceedings under the unusual circumstances presented here.

Therefore, the Court construes the submission of the March 11 and March 31 certificates to this Court as attempts to file them within the Eastern District of Michigan, where Pettiford is presently confined, due to the Government's failure to timely file the certificate in the District of Massachusetts before Pettiford was returned to the prosecuting district. Because the certificates have been transmitted to this Court and are construed as filed in this District, the certificates, once properly filed in a civil case companion to this criminal case, as explained below, will stay Pettiford's release pending completion of § 4246 proceedings, ensuring continued justification for Pettiford's custody despite the dismissal of his charges.

**(c)   Whether the Certificate is Otherwise Valid**

Because the Court will dismiss the indictment, this criminal case will close, but a new civil case will open. Because Pettiford reserved the right to file a Motion to Dismiss the future Petition for Civil Commitment, in the interest of time, the Court will discuss whether the

34

director made the necessary findings required to file a valid certificate and trigger further § 4246 proceedings.

As explained above, the director of the federal medical facility in which the person is hospitalized must certify that (1) the person is mentally ill, (2) as a result of their mental illness, their release poses a danger to people or property, and (3) no State facility can take care of the person. 18 U.S.C. § 4246(a). Different circuits have described the facility director's burden in different ways. *Coad*, 175 F.4th at 1243 n.8 (declining to decide "what level of evidentiary support it requires," but noting an "evaluation" is "necessary to make the certification decision" in the Ninth Circuit, *see Godinez-Ortiz*, 563 F.3d at 1032, while a § 4246(a) certificate need only be "facial[ly] sufficien[t]" in the Eighth Circuit, *see United States v. Wigren*, 641 F.3d 944, 946 (8th Cir. 2011)).

Here, the director of FMC Devens transmitted to the Clerk of this Court two letters purporting to be § 4246(a) certificates: one dated March 11, 2026, and one dated March 31, 2026. Pettiford argues that both the March 11 and the March 31 certificates are invalid because they contain factual inaccuracies: the March 11 certificate incorrectly stated that the Social Worker staff had contacted Michigan authorities, and the March 31 certificate incorrectly stated Pettiford was still housed at FMC Devens when he was already back in Michigan. ECF No. 65, PageID.394-95.

35

### *(i) March 11 Certificate*

Section 4246(a) requires the director to certify that "suitable arrangements for State custody and care of the person are not available." In the March 11 certificate, the director of FMC Devens certified that:

> FMC Devens Social Work staff have contacted Mr. Pettiford's state of domicile, Michigan, and have determined that suitable arrangements for state custody and care are not presently available.

Danger. Cert. p. 1 (on file with the Court). But during the competency hearing held on March 30, 2026, Dr. Hamilton testified that the March 11 certificate was "not accurate, [they] have not yet been able to reach out to Michigan" because they were not able to obtain Pettiford's signature before he left. Tr., ECF No. 63, PageID.347. The misstatement is a factual inaccuracy which renders the March 11 certificate defective. As the Fourth Circuit stated:

> The noncompliance with the statute is not a mere technicality—it is directly contrary to Congress' command. As the legislative history unequivocally states, Congress considered the care and custody of the mentally ill to be a state function and not a task for the federal government. In view of Congress' emphatic statement, the district court should not overlook the fact that the government has completely failed to comply with the terms of the law designed to ensure that a detainee is given to the care of the state at the earliest opportunity.

*Charters*, 829 F.2d at 487. And the Sixth Circuit specifically warned prosecuting courts that a person can be retained in federal custody

36

pursuant to § 4246(a) only if it is certified to the court that the state would *not* agree to assume his care. *Baker*, 807 F.2d at 1323. The Court cannot take factual misrepresentations in the director's certification under § 4246(a) lightly. The requirements under § 4246(a) are critical due process protections, not meaningless boxes to check.

### (ii) March 31 Certificate

Nonetheless, at the Court's urging, the BOP corrected the error and submitted an updated certificate the day after the competency hearing on March 31, 2026, identical in all aspects to the March 11 certificate, but for the different date. Dr. Hamilton sent an accompanying letter to the Court, explaining:

> In light of yesterday's discovery that FMC Devens had not yet inquired as to whether suitable arrangements for custody and care were available for Mr. Pettiford in the state of Michigan, a social worker at FMC Devens emailed Nick Norcross, MPA, State Assistant Administrator, State Hospital, Michigan DHHS on March 30, 2026, to pursue this matter. On March 31, 2026, the FMC Devens social worker received an email response from Mr. Norcross wherein he wrote, "Upon review, it is determined that there is no compelling reason to agree to a request for the transfer of Mr. Pettiford to an inpatient psychiatric hospital operated by the Michigan Department of Health & Human Services. The request is denied." As such, the Warden at FMC Devens subsequently signed a Certificate of Dangerousness due to Mental Disease or Defect on March 31, 2026. Please rescind the previous Certificate of Dangerous due to Mental Disease or Defect signed March 11, 2026.

37

Hamilton Update Letter, p. 1 (on file with the Court). Therefore, the March 31 certificate appears to cure the defect in the March 11 certificate.

But Pettiford points out that there is a different problem with the March 31 certificate: as of that date the director could no longer certify that Pettiford "is hospitalized" at FMC Devens because he left the facility on March 12, 2026. As explained above, accepting a certificate filed by the director of a facility from which the incompetent person has been discharged—as opposed to temporarily transported outside of the facility during the treatment period, like in *Godinez-Ortiz*, 563 F.3d at 1031— would be to ignore significant temporal and custodial limits included in the IDRA and give the Government "unlimited" time to file a certificate when it was already afforded a reasonable period of time to properly do so.[12] While the prosecuting court may accept an untimely certificate that can no longer be filed in the hospitalizing district due to the person's

---

[12] Moreover, had the certificate been timely filed in the District of Massachusetts at the end of the § 4241(d) period, whether Pettiford was to be "temporarily" or permanently returned to the prosecuting district would not have mattered, as the certificate would have stayed Pettiford's release to the community, and Pettiford would have been returned to the District of Massachusetts as soon as this Court dismissed the charges and lost jurisdiction over Pettiford. *See Baker*, 807 F.2d at 1325 (noting that while "there was no authority to confine appellant beyond the statutorily authorized four months [under § 4241(d)] since no further action was taken to extend his commitment," the appellate court lacked jurisdiction to order the person's release because a certificate had been filed in the district of confinement in the meantime).

return to the prosecuting district, as explained above, it may only do so if, at minimum, the certificate was completed while the person was within the physical bounds of the director's facility.

*Taken together*, however, the March 11 and March 31 certificates show that the director made the required findings that Pettiford, who was still housed at FMC Devens on March 11, is incompetent, his release would pose a danger, and Michigan has denied responsibility for his care. Thus, while the prosecuting court may accept an untimely certificate that can no longer be filed in the hospitalizing district due to the person's return to the prosecuting district, it may only do so if, at minimum, the certificate was completed while the person was within the physical bounds of the director's facility.

Therefore, the Court will accept the March 11 certificate, amended by the March 31 certificate, as validly presented to this Court for filing in the Eastern District of Michigan, triggering further proceedings under § 4246, including an evaluation and hearing to determine whether Pettiford's release would pose a danger, as further explained below.

Consequently, the Court will **DIRECT** the Government to open a miscellaneous case naming the United States as Petitioner and Isaac Pettiford as Respondent and notating the matter as a companion to this criminal case, and to file a Petition for Civil Commitment including as attachments the March 11 certificate and the March 31 certificate no later than seven (7) days from the date of this Order.

## 2. Evaluation

Finding that in the circumstances, this Court has authority to accept the certificate as filed in this District, conduct § 4246 proceedings, and stay Pettiford's release pending completion of such proceedings, the Court has discretion to order an evaluation pursuant to § 4246(b) "[t]o aid the court in making th[e dangerousness] determination" at the subsequent hearing. *See Wheeler*, 744 F. Supp. at 637. While the Government insists that such evaluation should occur at FMC Devens, defense counsel argues the evaluation should occur locally without causing further delay.

Section 4246(b) provides that, "[p]rior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted" pursuant to § 4247(b) and (c). In turn, Section 4247(b) requires that if such an examination is ordered, it "shall be conducted by [one or more] licensed or certified psychiatrist or psychologist" designated by the Court, except for one additional examiner that the defendant can select. When designating the examiner for a § 4246(b) evaluation, the court "may," but is not required to,[13] "commit

_____

[13] *See Black v. Pension Benefit Guar. Corp.*, 983 F.3d 858, 865 (6th Cir. 2020) (noting that "look[ing] to the plain text of the relevant subsection[,] . . . [t]he repeated use of the permissive verb 'may' . . .—as opposed to mandatory words like shall or must—indicates" permission, not requirement) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 11, at p. 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion.")).

the person . . . to the custody of the Attorney General for placement in a suitable facility . . . closest to the court" to be examined "for a reasonable period, . . . but not to exceed forty-five days," plus a "reasonable extension, not to exceed . . . thirty days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." 18 U.S.C. § 4247(b).

But "[i]n the absence of some evidence that commitment is necessary [for a § 4247(b) evaluation], a district court should not exact such a deprivation of liberty." *In re Newchurch*, 807 F.2d 404, 410 (5th Cir. 1986). In fact, legislative history indicates that Congress anticipated that § 4247(b) evaluations could "be conducted on an outpatient basis" without further commitment to the Attorney General's custody. *See* S. REP. 98-225, 235, 1984 U.S.C.C.A.N. 3182, 3417; Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 208, at 519 (4th ed. 2008) ("Commitment is not mandatory, and the court may order that the exam be conducted on an outpatient basis.").

Thus, when a court orders a § 4246(b) evaluation to be conducted pursuant to § 4247(b), it has discretion either to commit the defendant to the Attorney General's custody for the dangerousness examination, when such would be "necessary," or to order that the evaluation be conducted locally without further commitment to the Attorney General's custody. By way of example, in cases where an incompetent individual was no longer hospitalized at the federal medical facility, district courts have

41

ordered § 4246(b) evaluations to take place "locally," instead of further committing the individual for the evaluation. *See Wheeler*, 744 F. Supp. at 635, 639 (ordering a "local psychiatric examination and evaluation of defendant . . . pursuant to section 4246(b)" after the defendant was returned to the prosecuting district following the end of his § 4241(d) period and given the absence of a certificate); *Bonin*, 541 F.3d at 400-01 (noting that the § 4246 hearing, although held without authority, was conducted "in a manner that complied with §§ 4246(b) . . . and 4247," the evaluation provisions, which the district court had ordered to be conducted by a "local psychiatrist").

Here, the Court acknowledges the Government's arguments that "given that the government bears the burden of proof by clear and convincing evidence," it has an interest in "ensur[ing] that the evaluation is conducted under conditions that maximize accuracy and reliability," that "FMC Devens is the most appropriate facility because Defendant has already been evaluated and treated there by Dr. Hamilton," and "[r]eturning Pettiford to Devens ensures his continuity of care, access to clinicians familiar with his condition, and a reliable, comprehensive dangerousness assessment." ECF No. 66, PageID.421-23.

But none of these arguments address whether commitment is "necessary" to evaluate whether Pettiford's release would pose a danger so as to justify "exact[ing] such a deprivation of [Pettiford's] liberty." *See In re Newchurch*, 807 F.2d at 410 (vacating a district court order

42

committing a defendant to the custody of the Attorney General for a § 4247(b) examination because "[t]he government offered no evidence that the commitment of Newchurch . . . is necessary or that an examination adequate for determination of his sanity at the time of the alleged offenses cannot be conducted on an outpatient basis or by a confinement of short duration in a hospital near the place of trial.").

Dr. Hamilton explained that a § 4246(b) evaluation would include reviewing records already compiled, calling collateral sources, and an interview with Pettiford. Dr. Hamilton explained that she estimated the time required to review the records, call collateral sources, interview the defendant, and write the report to be between 24 and 40 hours. Tr., ECF No. 63, PageID.356. As to the interview with Pettiford, Dr. Hamilton explained that this interview would be with a "lens as to history of violence and the presence or absence of risk factors in the future." *Id.* at PageID.355. This would include a conversation about where Pettiford "would live or who his support system is, whether he would be interested in seeking treatment in the community." *Id.* (cleaned up). The goal is "to try to understand a little bit more about what his life would look like if released to the community without any kind of conditional release plan in place." *Id.* at PageID.356. While Dr. Hamilton did not say how long such an interview would last, her prior interviews with Pettiford lasted about 2 hours. *Id.* at PageID.334. It is not clear, therefore, why Pettiford would need to be committed to FMC Devens for an additional 45 to 75

43

days, when the bulk of that time will be spent reviewing records, calling collateral sources, and writing the report.

The Government also failed to address this Court's concerns regarding transportation delays and limited bed space availability in federal medical facilities across the country, in addition to the 45 to 75 days authorized for the commitment pursuant to § 4247(b). Dr. Hamilton explained in her Final Competency Report:

> [T]here is currently a significant waitlist for beds at inpatient forensic sites in the Bureau. . . . If [Pettiford] remains at FMC Devens, it will minimize the risk of further delays that could result from him having to be redesignated to a medical center for follow-up treatment or a new forensic evaluation.

Final Hamilton Report, p. 24 (on file with the Court). As explained above, because the BOP failed to timely file the certificate in the District of Massachusetts, despite ample time to do so, Pettiford left FMC Devens and returned to the Genesee County Jail in Michigan. Thus, according to Dr. Hamilton's report, Pettiford would need to be "redesignated" to a medical center and transported there—a process that previously took about four months—before the 45-to-75 days-long evaluation could even start. The Court's concerns regarding such delays are exacerbated given that Pettiford has already spent as much time in pretrial detention as the Government's sentencing guidelines would have recommended. Indeed, "[a]lthough [Pettiford] is currently [detained], due process concerns may nonetheless be implicated by the decision to transfer him

44

to BOP for an evaluation, rather than ordering a local, non-custodial evaluation." *United States v. Savage*, 2022 U.S. Dist. LEXIS 224265, *4-5 (M.D. Ala. Dec. 13, 2022) (declining to send incarcerated defendant to BOP for a second competency evaluation); *see also Vitek v. Jones*, 445 U.S. 480, 491 (1980) (holding that a convicted prisoner retains certain due process rights that require "the transfer of a prisoner from a prison to a mental hospital [to] be accompanied by appropriate procedural protections"). And as Dr. Hamilton testified, further commitment to FMC Devens would further confuse Pettiford's status as a pretrial detainee because "[i]n the Federal Bureau of Prisons, civilly committed people live among sentenced people." Tr., ECF No. 63, PageID.359.

When asked whether the interview could occur remotely to limit the delays, Dr. Hamilton explained that:

> [T]here are difficult to measure or articulate observations and knowledge that come about sitting with a person right there in front of you and watching them interact with their peers, other staff, and to be able to provide and adjust, say, Mr. Pettiford's psychiatric medications while he's here in front of us as well in order to continue to try to get him as healthy as possible so that my opinion is based on the best version of him that's possible. In a forum like a video interview, most of that is lost.

*Id.* at PageID.363. To the extent observing Pettiford during that time provides "intangibles" that will help evaluate his potential for dangerousness, defense counsel argues that Dr. Hamilton "has the

45

intangibles already. . . . [S]he's got hours with him. . . [W]e don't need Mr. Pettiford to be shipped out for that piece." *Id.* at PageID.371. Indeed, Dr. Hamilton and other BOP personnel have had ample opportunity to observe Pettiford's potential dangerousness in interactions with other prisoners and staff between June 4, 2025 and March 12, 2026. *See Dalasta*, 856 F.3d at 554 ("[C]ommitment under § 4241(d) provides the Attorney General's medical experts an opportunity to evaluate the defendant's dangerousness if he were released from custody after a § 4246(a) hearing."); *see also Carter*, 583 F. Supp. 3d at 104 (rejecting further delay and requiring local civil commitment or release despite concerns about the defendant's dangerousness because "the ball ha[d] been squarely in the government's court" for the past 5 months since the court granted the parties' joint motion to commit the defendant for a competency assessment).

While response to medication is an important intangible, it was confirmed that Pettiford has been receiving his medications at the Genesee County Jail in Michigan, and the statute does not anticipate a "prescribed regimen of medical, psychiatric, or psychological care or treatment" to be part of the dangerousness analysis until after the dangerousness hearing takes place and civil commitment is ordered, likely because such a regimen would be difficult to establish in 45 days. *See* 18 U.S.C. § 4246(d)(2). In fact, without interviewing Pettiford again, but based on the "intangibles" she already had, Dr. Hamilton was able to

46

administer 15 of the 20 Historical Clinical Risk ("HCR") assessment factors to conduct the preliminary dangerousness evaluation and issue the certificate. Tr., ECF No. 63, PageID.354-55. Dr. Hamilton only needs to administer the five remaining factors for the § 4246(b) evaluation, which, as she explained, would entail an interview to discuss "what his life would look like if released." *Id.* at PageID.356. A remote interview coupled with the prior in-person time Dr. Hamilton had with Pettiford for close to 10 months should equip Dr. Hamilton to account for Pettiford's "intangibles" while completing what remains of the evaluation.

Thus, the Court does not find that it is clearly necessary to commit Pettiford again to FMC Devens now that he has been returned to the Genesee County Jail in Michigan. Given that Dr. Hamilton had the chance to observe Pettiford in person for about ten months and could interview him remotely, and considering that Pettiford has already spent more time in custody than the minimum of his sentencing guidelines range, the Court finds that Pettiford's liberty interest in being evaluated where he is presently confined and without further delay significantly outweighs the Government's interest in returning him to FMC Devens for an evaluation.

Therefore, the Court will not commit Pettiford to the Attorney General's custody for the § 4246(b) evaluation. Rather, the Court will designate Dr. Diana Hamilton to perform the § 4246(b) evaluation of

47

Pettiford on an outpatient basis and to file her report with this Court within thirty (30) days of this Order. Arrangements for a remote or in-person evaluation of Pettiford at the Genesee County Jail in Michigan shall be arranged by the United States Pretrial Services Office in coordination with the United States Marshal's Service, Pettiford's counsel, and the United States Attorney's Office.

In so ordering, the dangerousness hearing pursuant to § 4246(d) may be scheduled as early as possible, rather than some five months later—as might be expected given the previous four-month waiting period before Pettiford could be admitted to FMC Devens, followed by a 30-to-75 day period for the evaluation. This more efficient process will therefore "minimize" the time Pettiford will spend as "an incompetent, unrestorable person waiting for a [dangerousness] determination," *see Wayda*, 966 F.3d at 308. After all, "[d]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738.

Upon receipt of Dr. Hamilton's report, depending on the findings of the report, the Court will promptly conduct a hearing pursuant to §§ 4246(c) and (d) comporting with the due process requirements of § 4247(b). At the hearing, the Government will bear the burden of showing by "clear and convincing evidence" that Pettiford "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or

48

serious damage to property of another," § 4246(d), and that no suitable arrangements for state custody are available, *see United States v. Dalasta*, 3 F.4th 1121, 1125 (8th Cir. 2021).

## IV. CONCLUSION

For the foregoing reasons, Pettiford's Motion to Dismiss the Indictment will be **GRANTED**. The Indictment will be **DISMISSED WITH PREJUDICE, EFFECTIVE SEVEN (7) DAYS FROM THE DATE OF THIS ORDER**.

It is **FURTHER ORDERED** that,

1. The Government shall file a civil action with the Court, naming the United States as Petitioner and Isaac Pettiford as Respondent, noting the matter as a companion to this criminal case, and including a Petition for Civil Commitment with both certificates referred to herein as attachments, no later than seven (7) days from the date of this Order.

2. Pursuant to 18 U.S.C. § 4246(b), Dr. Diana Hamilton, Psy. D., shall perform a psychiatric examination of defendant Isaac Pettiford. Arrangements for a remote or in-person evaluation of Pettiford at the Genesee County Jail in Michigan shall be handled through the United States Pretrial Services Office. The Government is directed to provide a copy of this Order to Dr. Hamilton promptly.

3. Pursuant to 18 U.S.C. § 4247(c), Dr. Hamilton shall prepare and file a psychiatric report within thirty (30) days of this Order with this Court, with copies provided to defense counsel and government counsel. Dr. Hamilton's report shall include: Pettiford's history and present symptoms; a description of the psychiatric, psychological, and medical tests employed and their results; the examiner's findings; the examiner's opinions as to diagnosis, prognosis; and the examiner's opinion as to "whether [Pettiford] is suffering from a mental disease or defect as a result of which his release would

49

create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. §§ 4247(c)(1)–(4). The psychiatric report may also include the examiner's opinion as to whether Pettiford's "mental condition is such that his . . . conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d)(2).

4. Pursuant to 18 U.S.C. § 4247(b), if desired by Pettiford's counsel, an additional examiner selected by Pettiford may perform a second psychiatric examination of Pettiford before the hearing, and prepare a report of the same. Arrangements for a remote or in-person evaluation of Pettiford at the Genesee County Jail in Michigan shall be handled through the United States Pretrial Services Office. If conducted, such report shall be filed with the Court within forty-five (45) days of the date of this Order.

5. Upon receipt of the report(s), the Court will promptly schedule a hearing pursuant to 18 U.S.C. §§ 4246(c) and (d).

**SO ORDERED**.

Dated: June 8, 2026            /s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE